```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
SHARKEY JAMES,                                                         :
                                                                       :
                              Petitioner,                              :
                                                                       :       20 Civ. 3468 (JPC) (SDA)
            -v-                                                        :
                                                                       :       OPINION AND ORDER
WILLIAM F. KEYSER,                                                     :
                                                                       :
                              Respondent.                              :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

On February 25, 2015, Petitioner Sharkey James was convicted in New York Supreme Court, New York County, of robbery in the first degree and robbery in the second degree. Dkt. 51 ("Am. Pet.") at 1.[1] Following his conviction, on September 1, 2015, he was sentenced to an indeterminate term of twenty-two years to life. *Id.* On April 30, 2020, he filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, alleging six grounds on which his conviction and sentence violated the Constitution, laws, or treaties of the United States. *See generally* Dkt. 2. Subsequently, on July 15, 2021, he amended the Petition to add a seventh such ground. *See* Am. Pet at 14-16. On June 19, 2020, the Honorable Laura Taylor Swain, to whom this case was then assigned, referred the Petition to the Honorable Stewart D. Aaron. Dkt. 13.[2] On December 6, 2021, Judge Aaron issued a Report and Recommendation, in which he recommended that the Court deny the Amended Petition in its entirety. *See generally* Dkt. 61 ("R&R"). After the Court extended Petitioner's time to object to the Report and Recommendation until February 14, 2022, Dkt. 62,

---

[1] For citations to the Amended Petition, pincites correspond to the page numbers of the pdf, not the page numbers listed on the underlying document.

[2] This case was reassigned to the undersigned on October 5, 2020.

Petitioner filed timely objections on January 20, 2022. Dkt. 63 ("Objections"). On February 23, 2022, Respondent responded to the Objections, *see* Dkt. 67, and on March 15, 2022, Petitioner filed a letter in reply, *see* Dkt. 68. Having considered Petitioner's Objections, the Court adopts the Report and Recommendation in its entirety for the reasons given below, and denies the Amended Petition.

## I. Legal Standards

**A. Standard of Review of a Magistrate Judge's Report and Recommendation**

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a report and recommendation. 28 U.S.C. § 636(b)(1)(C). Within fourteen days after a party has been served with a copy of the magistrate judge's report and recommendation, the party "may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). If a party submits a proper objection to any part of the magistrate judge's disposition, the district court conducts *de novo* review of the contested section. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

To be proper, an objection must be "clearly aimed at particular findings," *Hernandez v. City of New York*, No. 11 Civ. 6644 (KPF) (DF), 2015 WL 321830, at *2 (S.D.N.Y. Jan. 23, 2015) (quoting *Vlad-Berindan v. MTA N.Y.C. Transit*, No. 14 Civ. 675 (RJS), 2014 WL 6982929, at *1 (S.D.N.Y. Dec. 10, 2014)), and may not be "conclusory or general," *id.* (quoting *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009)). Parties may neither "regurgitate the original briefs to the magistrate judge" nor introduce new arguments that could have been raised before the magistrate judge in the first instance but were not. *Id.*; *accord United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019).

A district court also reviews for clear error those parts of a report and recommendation to which no party has filed proper or timely objections. 28 U.S.C. § 636(b)(1)(A); *Lewis v. Zon*, 573

F. Supp. 2d 804, 811 (S.D.N.Y. 2008) ("To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks omitted)).  "A magistrate judge's decision is clearly erroneous only if the district court is 'left with the definite and firm conviction that a mistake has been committed.'"  *Cameron v. Cunningham*, No. 13 Civ. 5872 (KPF) (FM), 2014 WL 4449794, at *2 (S.D.N.Y. Sept. 9, 2014) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)).

"Objections of *pro se* litigants are generally accorded leniency and construed to raise the strongest arguments that they suggest."  *Hernandez*, 2015 WL 321830, at *3 (quoting *Quinn v. Stewart,* No. 10 Civ. 8692 (PAE) (JCF), 2012 WL 1080145, at *4 (S.D.N.Y. Apr. 2, 2012)).  "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a 'second bite at the apple' by simply relitigating a prior argument."  *Id.* (quoting *Pinkney v. Progressive Home Health Servs.,* No. 06 Civ. 5023 (LTS) (JCF), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008)).

**B. Standard of Review Under Section 2254 of a Petition for Habeas Corpus**

Title 28, United States Code, Section 2254 permits an individual held "in custody pursuant to the judgment of a State court" to petition a district court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  For a district court to grant such an application, the petitioner must have first "exhausted the remedies available in the courts of the State," *id* § 2254(b)(1)(A), unless "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant," *id.* § 2254(b)(1)(B).  If in the course of exhausting his state remedies a petitioner's claim is "adjudicated on the merits in State court proceedings," then a federal court may grant the petition with respect to that claim only if the state

court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id* § 2254(d). Furthermore, because relief is available under section 2254 only on the grounds that the petitioner is in custody in violation of federal law, such petitions cannot be entertained with respect to claims that were rejected in state court based on a failure to comply with procedural requirements imposed by state law, unless the petitioner can demonstrate both cause for the procedural default and actual prejudice from the alleged violation of federal law. *See, e.g.*, *Engel v. Isaac*, 456 U.S. 107, 129 (1982) ("[A]ny prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.").

**C. Standard of Review of a Claim of Ineffective Assistance of Counsel**

Under the Supreme Court's decision in *Strickland v. Washington*, "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components." 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. But because in retrospectively evaluating the performance of counsel a court might easily be swayed by its knowledge of whether counsel's trial strategy proved successful, a court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* at 690. Second, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692. "In certain Sixth Amendment contexts, prejudice is presumed." *Id.* In other contexts, "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove

prejudice." *Id.* at 693. To discharge that burden, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," where "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## II. Discussion

The Court assumes the parties' familiarity with the underlying facts and procedural history of this case, which are detailed in the Report and Recommendation. *See* R&R at 1-14. The Amended Petition identifies seven alleged defects in Petitioner's state court proceedings: (1) the trial court's admission of evidence of uncharged crimes, Am. Pet. at 4; (2) the jury's reaching a verdict against the weight of the evidence, *id.* at 6; (3) the trial court's failure to suppress the robbery victims' show-up identification of Petitioner on the night of the robbery, *id.* at 7-8; (4) the trial court's denial of his speedy trial motion, *id.* at 9; (5) the sentencing court's exclusion of his term of federal incarceration in computing whether ten years had passed since the two prior state convictions based on which he was adjudged a persistent violent felony offender, *id.* at 11; (6) the sentencing court's predication of his persistent violent felony offender status on a conviction to which he pled guilty without having first been appropriately warned that his plea could increase the sentence he would receive for any future convictions, *id.* at 13; and (7) the ineffective assistance provided by his counsel on appeal, *id.* at 14-15. In support of the seventh ground, Petitioner locates his appellate counsel's supposed ineffective assistance in the failure to raise two particular arguments: the argument that pretrial delays denied him the right to a speedy trial guaranteed by the Sixth Amendment to the U.S. Constitution, and the argument that his enhanced sentence as a persistent violent felony offender was unconstitutional because, before pleading guilty to one of the two predicate felonies, he had not been appropriately warned that his guilty plea might subject him to an increased sentence as a persistent violent felony offender following future convictions. *Id.*

5

In the Report and Recommendation, Judge Aaron recommended that the Court deny the Amended Petition with respect to all seven grounds. *See generally* R&R at 18-27. Petitioner raises two objections to the Report and Recommendation. *See* Objections at 3 ("There are two main objections specifically regarding Magistrate Judge Stewart's [sic] Report and Recommendation."). Each pertains to the Report and Recommendation's analysis of the seventh ground named in the Amended Petition—namely, Petitioner's claim that he received ineffective assistance from appellate counsel. In his Report and Recommendation, Judge Aaron analyzed the two arguments that Petitioner faults his appellate counsel for not raising on direct appeal, finding each to be without merit. R&R at 24-27. And because those arguments were without merit, appellate counsel's failure to raise them cannot satisfy either component of the *Strickland* test: since it is obviously reasonable for counsel not to raise a meritless argument, the failure to do so cannot fall "below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and since the state court would have been unlikely to accept a meritless argument, there is no "reasonable probability that . . . the result of the proceeding would have been different" had those arguments been raised, *id.* at 694. *See* R&R at 27.

Petitioner objects to Judge Aaron's analysis of these two arguments that his appellate counsel failed to raise. Those objections largely reiterate arguments made in support of the Amended Petition in Petitioner's reply briefing before Judge Aaron. *Compare* Objections *with* Dkt. 60 at 1-13. This Court would therefore be justified in reviewing the Report and Recommendation in its entirety solely for clear error. *See Vlad-Berindan*, 2014 WL 6982929, at *2 (reviewing for clear error when "Plaintiff's Objections" amount to "largely conclusory assertions that reiterate factual allegations and arguments already presented to" the magistrate judge). For the sake of completeness, however, this Court will consider Petitioner's Objections on their merits and conduct *de novo* review of the portions of the Report and Recommendation to which Petitioner has objected.

6

**A. Speedy Trial**

Prior to his trial, on October 8, 2014, Petitioner moved to dismiss the indictment filed against him on the grounds that the pretrial delays up to that point had deprived him of his right to a speedy trial. State Record at 356.[3] That motion, however, was based solely on the right to a speedy trial guaranteed by New York statute, not on the right guaranteed by the Sixth Amendment to the U.S. Constitution. *Id.* (arguing that dismissal is required "on the grounds that the People have failed to be ready for trial within six months as prescribed by C.P.L. §30.30(1)(a)"). Petitioner first argues that this failure to appeal to the federal constitutional right to a speedy trial was objectively unreasonable, unjustified by any sound trial strategy. Objections at 4, 7. Next, he argues that his appellate counsel rendered ineffective assistance by failing to raise the Sixth Amendment speedy trial issue on appeal, including by failing to argue that trial counsel rendered ineffective assistance by omitting the issue below. *Id.* at 4, 8. Thus, he concludes, the state court adjudication on this issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), and "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2), and Judge Aaron's recommendation otherwise was erroneous. Objections at 4-5, 7.

Whether a pretrial delay violated a criminal defendant's Sixth Amendment right to a speedy trial depends on a balancing test employing four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The third factor—the defendant's assertion of the right—is often necessary for a successful speedy trial claim. *Id.* at 532 ("We emphasize that failure to assert the right will make

---

[3] The records of Petitioner's state court proceedings, cited as herein State Record, may be found at Docket Numbers 24-1 through 24-4.

7

it difficult for a defendant to prove that he was denied a speedy trial."). And Petitioner did assert his right to a speedy trial, in two *pro se* motions, *see* State Record at 365-70, 389-94, and in a motion submitted by his counsel, *see id.* at 356-64. Nonetheless, as Judge Aaron explained, R&R at 25-26, the balance of the remaining factors weighs against Petitioner. Consequently, his argument that he was denied a speedy trial in violation of the Sixth Amendment is without merit.

First, approximately twenty-eight months passed between Petitioner's being charged on October 16, 2012, *see* State Record at 347, and the commencement of his trial on February 9, 2015, Dkt. 24-6 at 10. A "postaccusation delay . . . approach[ing] one year" is "unreasonable enough to trigger the *Barker* enquiry." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). But while a delay of twenty-eight months is therefore sufficiently lengthy to "trigger an inquiry into the remaining three *Barker* factors," *United States v. Reyes-Batista*, 844 F. App'x 404, 407 (2d Cir. 2021), courts have often found no Sixth Amendment violation when trial was delayed by a considerably longer period. *See, e.g.*, *Vermont v. Brillon*, 556 U.S. 81, 84 (2009) (a delay of "nearly three years"); *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986) (a "90-month delay"); *Barker*, 407 U.S. at 533 (a delay of "well over five years"); *United States v. Hoskins*, 44 F.4th 140, 154 (2d Cir. 2022) (a delay of "six years"); *United States v. Cabral*, 979 F.3d 150, 153 (2d Cir. 2020) (an "11-year delay"); *United States v. Swinton*, 797 F. App'x 589, 594 (2d Cir. 2019) (a delay of "[a]lmost 57 months"). Thus, the length of the delay between Petitioner's being charged and the commencement of his trial was insufficient on its own to establish a Sixth Amendment violation.

"[T]he second [*Barker*] factor—reason for delay—is often critical." *United States v. Moreno*, 789 F.3d 72, 79 (2d Cir. 2015). As the Second Circuit has explained, periods of pretrial delay must be located on a "spectrum of weights, in which . . . 'valid' reasons for delay . . . are taken off the scale entirely." *United States v. Tigano*, 880 F.3d 602, 612 (2d Cir. 2018). As a result, "[t]he Sixth Amendment is rarely violated by delay attributable entirely to the defendant or by delay

8

that serves some legitimate government purpose." *Moreno*, 789 F.3d at 79 (citations omitted). Judge Aaron correctly found that this factor weighs strongly against Petitioner. R&R at 25. A majority of the pretrial delay in his case either must be attributed to him or served a legitimate government purpose; in either case, that delay occurred for a valid reason and thus must be "taken off the scale entirely" in evaluating whether he was denied a speedy trial. *Tigano*, 880 F.3d at 612.

Delays attributable to Petitioner include those caused by pretrial motions he had filed, State Record at 348, 351, 354-55, by a change in his counsel, *id.* at 349, and by delays requested by his counsel due to unavailability, *id.* at 350, 352. *Cf. Brillon*, 556 U.S. at 85 (holding that delays sought by counsel or caused by counsel's withdrawal are ordinarily attributable to defendants for speedy trial purposes). Further delays occurred because one victim of Petitioner's robbery was unavailable during the period immediately after she gave birth, State Record at 351-52, while the other was unavailable during his deployment with the United States Navy, *id.* at 353-54. The Supreme Court has explicitly held that "a missing witness" is "a valid reason . . . [that] should serve to justify appropriate delay." *Barker*, 407 U.S. at 531. And approximately three additional months of delay resulted from the People's motion to consolidate Petitioner's trial with that of his accomplice in the robbery, who had evaded detection and was arrested approximately fourteen months after Petitioner was charged. State Record at 430. Because joinder of criminal defendants is generally favored, particularly when they are alleged to have violated the same statutory provisions through the same joint criminal acts, consolidation was a legitimate government purpose. *Cf. United States v. Cain*, 671 F.3d 271, 296-97 (2d Cir. 2012) (holding that delay caused by the government's justified pretrial motions should not be counted against the government for speedy trial purposes). To be sure, the joinder motion was eventually withdrawn because Petitioner's videotaped confession could not be redacted in a manner that would not be prejudicial to his accomplice. State Record at 353-54. The delay caused by that motion would weigh heavily against Respondent were it

9

attributable to the People's negligence or bad faith, *see Tigano*, 880 F.3d at 612, but the Appellate Division found that "there is nothing to suggest that the motion was not made in good faith or that it was frivolous," State Record at 266. And when the delays that are attributable to Petitioner or that served a legitimate government purpose are excluded, less than eleven months remain. Without more, a delay of that length attributable to the government does not violate the Sixth Amendment. *See Moreno*, 789 F.3d at 82 ("Unquestionably, the ten-month delay attributable to the government here cannot sustain a Sixth Amendment claim absent some additional compelling circumstance, such as bad faith by the prosecution or actual prejudice." (internal quotation marks omitted)).

Lastly, Petitioner has failed to show meaningful prejudice from that delay. Evaluations of prejudice due to delay must consider three interests protected by the right to a speedy trial: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Of those three, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Consequently, the Second Circuit "[has] generally required a showing of some significant trial-related disadvantage in order to establish a speedy-trial violation." *Cain*, 671 F.3d at 297. And Petitioner has not shown how the delay of the start of his trial produced any disadvantage at trial whatsoever. Consequently, the fourth *Barker* factor weighs against Petitioner, as well.

Since Petitioner's trial was delayed for well over a year, and since during that period he did seek a speedy trial, a Sixth Amendment claim would not have been frivolous to raise on his appeal. But with all remaining factors weighing against Petitioner, such a claim was unlikely to succeed. Therefore, as Judge Aaron correctly concluded, Petitioner's appellate counsel's failure to raise that argument does not satisfy the *Strickland* test for ineffective assistance of counsel and does not constitute a valid basis for granting Petitioner a writ of habeas corpus.

B.  **Petitioner's 1988 Guilty Plea**

Petitioner next challenges Judge Aaron's determination that appellate counsel was not ineffective in failing to argue that the sentencing court improperly relied on Petitioner's 1988 conviction to adjudicate him a persistent violent felony offender. Objections at 5-7, 9-12. Because Petitioner had twice been convicted of robbery prior to his conviction for the present offense, he was sentenced in 2015 to a longer term of incarceration as a persistent violent felony offender. R&R at 10. Before Petitioner's 1988 guilty plea, which resulted in one of his two predicate felony convictions and therefore led to the imposition of a higher sentence for his 2015 robbery convictions, a court clerk, rather than the judge, advised him of certain sentencing consequences of the plea. *Id.* at 5-6. But because informing a defendant of the sentencing consequences of a plea is a core judicial function that cannot be delegated, Petitioner reasons, his 1988 guilty plea was invalid and the resulting conviction unconstitutional. *Id.* at 10-11. And because appellate counsel did not advance that argument in Petitioner's direct appeal, he concludes, he is entitled to relief under both sections 2254(d)(1) and (d)(2), and Judge Aaron erred in concluding differently. *Id.* at 12. As Judge Aaron correctly explained, R&R at 26-27, however, Petitioner is incorrect that his guilty plea was unconstitutionally involuntary, and thus his appellate counsel did not provide ineffective assistance by failing to raise that argument in his appeal.

Because by pleading guilty a criminal defendant waives his or her constitutional right to a trial, a guilty plea must be a "knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). For that reason, a plea of guilty is valid only if "entered by one fully aware of the direct consequences." *Id.* at 755 (internal quotation marks omitted). Petitioner argues that his 1988 plea fails to meet this standard because he was inadequately warned that the resulting conviction might serve to enhance the sentence imposed for any offenses of which he might be convicted in the

11

future, such as the sentence imposed in the present case.  In particular, the warning he received was inadequate, in his view, because it was provided not by the judge himself but rather by a court clerk.  *See* Objections at 5-6; *id.* Ex. B ("1988 Plea Tr.") at 14:13-19.

As a preliminary matter, Petitioner's Objections misstate the content of the warning that he received prior to his 1988 guilty plea.  Petitioner was warned as follows: "if you have previously been convicted of a predicate felony, as defined under 7006 of the Penal Law, that fact may be established after your conviction or plea of guilty in this action now before this Court and you will be subject to different or additional punishment."  1988 Plea Tr. at 14:14-19.  Petitioner appears to believe that this warning concerned the potential consequences arising from the fact that his 1988 guilty plea would result in his conviction of a predicate offense for the purposes of the persistent violent felony offender statute.  *See, e.g.*, Objections at 5-6.  A warning of that sort would inform Petitioner of the enhanced punishment he would receive were he to be convicted of any *future* offenses.  But the warning he actually received instead plainly warned him of the consequences of *past* convictions, since it concerned his potential liability "if you *have previously been* convicted of a predicate felony."  1988 Plea Tr. at 14:14-15 (emphasis added).  Furthermore, the warning makes clear that a past conviction of a predicate felony might have adverse consequences on his sentence "in this action *now* before this Court."  1988 Plea Tr. at 14:17-18 (emphasis added).  That is, Petitioner was warned that the sentence that would be imposed for the offense to which he was about to plead guilty in 1988 would be altered or increased if he had previously been convicted of a predicate felony.  He received no warning whatsoever concerning the effect of the 1988 guilty plea on the sentence that would be imposed in the event of any future convictions.

Given the warning that was in fact given prior to his 1988 guilty plea, Petitioner cannot show that the plea was constitutionally invalid.  As Judge Aaron explained, R&R at 26 n.18, the failure to warn Petitioner that his guilty plea might subject him to enhanced sentences for future

12

offenses, should he be adjudged a persistent violent felony offender, cannot render that plea invalid. Under *Brady*, the validity of a guilty plea requires only that a defendant be "fully aware of the direct consequences." 397 U.S. at 755 (internal quotation marks omitted). And the Second Circuit has held that although it is "a foreseeable possibility" that "the penalty for [a future offense] would be enhanced as a result of the original offense," that consequence is collateral rather than direct, and thus "the defendant need not be told of this possible consequence in his original plea colloquy." *United States v. Salerno*, 66 F.3d 544, 551 (2d Cir. 1995). In his Objections, Petitioner concedes that the enhanced sentence for his present offense was collateral rather than direct, but then argues that "once the Court has made its determination to so advise the defendant of such a collateral consequence, to then delegate the duty of such a core judicial function impacting the defendant's sentence, to a non-judicial officer is violative of Article III of the U.S. Constitution." Objections at 11 n.6. But again, the premise of this argument is false: the state court did not advise Petitioner of the collateral consequence of his 1988 plea. Petitioner's argument therefore fails, and this Court need not reach whether a state judge, rather than a court clerk, must advise a defendant of the consequences of a guilty plea, as that situation simply does not present itself here.

Furthermore, Petitioner was in fact fully aware of all the actual direct consequences of his 1988 guilty plea entirely independent of the warning he received. While the Supreme Court has not addressed the question, the Second Circuit has defined a consequence of a guilty plea as "direct" if it "represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *United States v. U.S. Currency in the Amount of $228,536.00*, 895 F.2d 908, 915 (2d Cir. 1990) (internal quotation marks omitted). Convictions for predicate felonies prior to 1988 would have led automatically to Petitioner's being adjudged a persistent violent felony offender at sentencing following his 1988 guilty plea, thereby altering the range of punishment to which he was liable. That adjudgment as a persistent violent felony offender would qualify as a direct

13

consequence of his plea. But, as a matter of fact, there is no evidence in the record that Petitioner was adjudged a persistent violent felony offender following his 1988 conviction, presumably because he had not previously been convicted of any predicate felonies. *See* State Record at 452-3 (finding, at Petitioner's 1990 sentencing, that his 1988 guilty plea represented his only predicate felony). Thus, Petitioner was "fully aware of the direct consequences" of his 1988 guilty plea, independent of any warning he received concerning his potential adjudgment as a persistent violent felony offender at sentencing, since adjudgment as a persistent violent felony offender was not in fact a direct consequence of his plea. As Judge Aaron correctly concluded, R&R at 26-27, Petitioner's 1988 guilty plea was valid, his conviction was constitutionally obtained, and the use of that conviction to enhance his present sentence was constitutional. Because any argument to the contrary would have been meritless, Petitioner's appellate counsel did not provide ineffective assistance by failing to make it, and that failure therefore does not constitute a valid basis for granting the writ Petitioner seeks.

### III. Conclusion

For the foregoing reasons, the Court finds Petitioner's Objections to be without merit, and therefore adopts the portions of the Report and Recommendation to which Petitioner has objected. The Court has additionally reviewed for clear error the remainder of the Report and Recommendation to which Petitioner did not object, and finds it to be well-reasoned and its conclusions well-founded. Consequently, the Court adopts the Report and Recommendation in its entirety and denies the Amended Petition. As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *see also, e.g.*, *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for an appeal. *Cf. Coppedge v. United States*, 369 U.S.

438, 444-45 (1962). The Clerk of Court is respectfully directed to close this action, to enter judgment in favor of Respondent, and to mail a copy of this Order to *pro se* Petitioner Sharkey James.

    SO ORDERED.

Dated: January 9, 2023            _____
       New York, New York              JOHN P. CRONAN
                                                  United States District Judge